# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Criminal Action Number** |
| | ) | **10-00121-01-CR-W-DGK** |
| **Joseph M. Mabery,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE, filed on July 30, 2010 [Doc. 18] by defendant Joseph M. Mabery ("Mabery"). On August 19, 2010, the undersigned held an evidentiary hearing on the defendant's motion. Mabery was present and was represented by his counsel, Assistant Federal Public Defender Travis Poindexter. The government was represented by Assistant United States Attorney Bruce Clark. At the evidentiary hearing, the government called two witnesses, Detective Zachary True and Officer James Cisneros, both with the Kansas City Missouri Police Department. Additionally, the following exhibits were admitted into evidence:

| Number | Description |
|---|---|
| Govt. ##1-7 | Various photographs of scene of stop, pursuit and arrest |
| Govt # 8 | Aerial map of the scene |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

1

## PROPOSED FINDINGS OF FACT

1. On April 14, 2010, Officers James Cisneros and Zachary True[1] were on their regular patrol for the Kansas City Missouri Police Department near the area of 207 North Askew in Kansas City, Missouri. Tr. at 4-5, 15, 35.

2. The particular location of 207 North Askew was known to the officers as a drug house. Tr. at 5, 35-36, 50-51.

3. As part of their patrol, the officers routinely check the parking lot at 207 North Askew since that is where a lot of drug activity occurs. Tr. at 36-37.

4. On April 14, 2010, at approximately 3:00 a.m., as the officers were driving past 207 North Askew, they noted a black Jeep parked in the parking lot near the back of the residence with its dome light on. Tr. at 5-6, 17-18, 36-37.

5. As the officers in the marked squad car were driving past 207 North Askew, Officer True observed the dome light in the Jeep shut off and someone in the Jeep moved their head backward so as not to be seen. Tr. at 37-38.

6. The Jeep had been backed into the parking lot so that it was facing out toward Askew. Tr. at 24, 31, 37-38.

7. The officers stopped their marked squad car in the middle of the intersection and turned their squad car spotlight on the parked Jeep and observed two people in the Jeep – a male in the driver's seat (later identified as Mabery) and a female in the front passenger seat. Tr. at 5-7, 9, 13, 21, 37, 45-46.

8. The officers stopped the squad car in front of the entrance to the parking lot at 207 North Askew. Tr. at 46, 49.

9. While the spotlight was shining on the Jeep, the officers observed Mabery in the driver's seat immediately exit the vehicle, drop a bag on the ground, and take off running away from the officers. Tr. at 7-8, 26-27, 38-39.

10. Officer Cisneros believed that the dropped bag contained marijuana. Tr. at 8.

11. The officers then pursued Mabery on foot. Tr. at 7-10, 28, 40-41.

---

[1] After the incident involving Mabery but before the suppression hearing, Officer True was promoted to detective. For purposes of this matter, he will be referred to as Officer True.

12. After an extended pursuit and an attempt to physically resist arrest, the officers eventually apprehended Mabery and handcuffed him. Tr. at 10.

13. Thereafter, Mabery – still handcuffed – again ran from the officers. Tr. at 10-11.

14. While pursuing Mabery, Officer Cisneros observed Mabery attempting to reach into his right front pocket. Tr. at 11-12.

15. Ultimately, the officers again subdued Mabery and took him back to an awaiting patrol wagon. Tr. at 12.

16. Before entering the patrol wagon, Mabery was frisked and a loaded handgun was found in Mabery's right front pocket as well as other contraband. Tr. at 12-13.

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and

---

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217 (1984).

In his MOTION TO SUPPRESS EVIDENCE, Mabery asserts a single argument – Officers Cisneros and True lacked sufficient reasonable suspicion that criminal activity was afoot when they "stopped" the black Jeep by parking their squad car in front of the parked Jeep. The Court rejects Mabery's argument.

4

Assuming for the sake of argument that a Fourth Amendment stop occurred when the officers parked their squad car on Askew, the Court concludes that there was sufficient reasonable suspicion to conduct at least a minimal *Terry* stop. At that point, the parked vehicle was in the lot of a known drug house at 3:00 a.m. with occupants in the vehicle with the dome light on. When the officers drove past the parking lot, the officers saw the occupants move so as to not be seen inside the Jeep and they turned off the dome light. Such factors might not support intrusive law enforcement actions, but it certainly justifies the minimal police action of parking a squad car in front of the vehicle and shining a spotlight at the vehicle to ensure that the vehicle is not being stolen or that an individual in the vehicle is not in trouble. As the Eighth Circuit has noted:

> For a *Terry* stop to be considered valid from its inception, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence.

*United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995) (*quoting in part*, *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880 (1968)).

In *Dawdy*, the Eighth Circuit found that a permissible *Terry* stop occurred after an officer observed an automobile parked behind a pharmacy that was normally closed on Sunday night. *Dawdy*, 46 F.3d at 1428. In addition, the officer was aware that there had been apparently false burglary alarms at the pharmacy on several other occasions and that although the car in the parking lot was occupied, its lights were off. *Id*. *See also United States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991) (officer had sufficient reasonable suspicion to conduct limited *Terry* stop where he noticed suspect parked in a parking lot at 4:00 a.m. in a high crime area, when

5

commercial establishments served by the lot were closed for the night and suspect attempted to evade officer as he approached parked vehicle).

Under the facts presented at the evidentiary hearing, the Court concludes that Officers Cisneros and True were justified in briefly stopping their squad car in front of the Jeep and shining a spotlight at the vehicle. Whether the officers were justified in taking more intrusive and/or more time-consuming actions, the Court need not decide. The actions of Mabery – dropping apparent contraband on the ground, fleeing the officers, and resisting arrest – clearly justify law enforcement actions taken after the initial, momentary traffic stop.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Mabery's MOTION TO SUPPRESS EVIDENCE filed on July 30, 2010 (Doc. 18).

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                 */s/ John T. Maughmer*
                 **John T. Maughmer**
                **United States Magistrate Judge**